# Wallace, Appellant, *v.* Steele.

*Contract—Evidence—Parol evidence—Nonsuit.*

Where a building contract in writing is complete in itself as to the parties, terms, conditions and stipulations, an alleged contemporaneous oral agreement that the building should be of a certain tensile strength, cannot be shown to vary the written agreement except by evidence which is clear, precise and indubitable.

Argued March 24, 1910. Appeal, No. 303, Jan. T., 1909, by plaintiffs, from order of C. P. No. 5, Phila. Co., Sept. T., 1904, No. 1,008, refusing to set aside nonsuit in case of John H. Wallace and Francis W. Wallace, trading as John H. Wallace & Brothers, v. William Steele et al., trading as William Steele & Sons. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Assumpsit on a building contract. Before STAAKE, J.

At the trial the court entered a compulsory nonsuit for the reasons stated as follows:

This case is one in which the plaintiffs claim damages

from the defendants, and aver as the basis of those damages that defendants, who were engaged in the business of contracting and erecting buildings in October of 1899, at that time entered into a written agreement with the plaintiffs, a copy of which agreement is attached to the pleadings and set out as a part of the basis of the claim. The written agreement was to erect a three-story brick mill on the site of the old plant on Juniper street, and it is averred that "the said defendants also verbally agreed at the time, in addition to the aforesaid written agreement, to erect and build a mill to conform to their business, and of sufficient tensile strength to bear the weight and burden of said machines properly and safely, and especially those that were to be placed on the second floor, and with little or no deflection or vibration when running, and with the distinct understanding that the mill was to be satisfactory to the said plaintiffs and in conformity with the whole agreement."

Then the breach of the agreement is alleged to be by reason of the "faulty construction, low grade of material used and poor workmanship, in addition to misrepresentation on the part of the defendants, who violated and broke their contract in not erecting a building as they agreed to," etc.

Now, it may be a question whether there has been any evidence submitted to the jury which fully covers all of the averments as to what the alleged verbal agreement actually was. Surely, there has been no witness who in terms testified that there was any verbal agreement covering all of the points which I have indicated. If there is a clear and well-established principle of law, it is that the very object of all written agreements is to avoid all the disputes between the parties which might arise as to what had or had not been agreed upon or understood between them prior to the execution of the written agreement. Therefore, the result of all prior conferences and consultations and considerations is presumed to be set out in the written agreement. We start with that presumption.

The law, however, says that where you can show by clear, precise and indubitable evidence certain facts which were the inducement for entering into the written contract, they may under certain conditions be considered a part of the whole agreement, and to that extent be allowed to alter, vary or even contradict the written agreement. To do that, however, you must show either a vagueness on the part of the written agreement, or you must show that there is something in the written agreement that prevents its being considered as a whole, entire agreement, and that, therefore, in order to get the real intentions of the parties, you must permit it to be varied or altered by the parol testimony.

Such alterations, variations or contradictions, however, are not favored in the law. Therefore, it is said that the testimony in support of them must be clear, precise and indubitable.

Now, we start out here with the fact that some doubt, at least, is cast upon the question by the fact that we have here the evidence of the adoption of an agreement which appears on the face of the original to be a "uniform contract," the form of contract adopted and recommended for general use by the American Institute of Architects and the National Association of Builders, and presumably from the printing in red ink at the top, the contract in this form is furnished on application by the Master Builders' Exchange of Philadelphia. When we look at the contract we see that the names of the parties are correctly stated—that the object for which the building is to be used is stated: "The erection of a three-story manufacturing building,"—with the location properly described, but apparently containing an error that the building was to contain in front on Juniper street ninety feet and extending in depth westwardly eighty feet, instead of the dimensions being the other way. We find further that the price for which the work is to be done is stated, with a stipulation as to how it is to be paid, as well as the provision that no liens are to be filed,

and with all of the usual clauses of such an agreement. There is nothing in it at all to indicate that the conversations which took place between these parties did result in their reaching the dignity of a meeting of minds and become in the law an agreement upon the part of the defendants to the effect that the building which they were to build would have to bear a certain specified weight. There is no reference to the seven machines or to the fourteen tons weight each, or that it was to be satisfactory to the owners. All of these important matters which are said to have been discussed before the actual signing and execution of the agreement, are not in the agreement itself.

In addition to that, we find that at some subsequent time, subsequent to the date when it is admitted the building was completed and when the owners carried out their part of the contract by paying cash and notes which were subsequently renewed, as has been testified here, when additional work was done which was not indicated in the plan which was made a part of the contract and woven into it by the terms of the contract, the owners themselves, instead of complaining that the defendants had not lived up to the contract, not only paid them their money, but they actually paid them some hundreds of dollars extra which they would have been under no obligation whatever to pay them if the contract was the parol agreement which it is claimed here it was, in addition to the written agreement.

For these and other reasons which might be stated, the court is of the opinion that there has not been established here by testimony which is clear, precise and indubitable, such a parol contract as would justify the court in saying that it could be construed to alter, vary or contradict the written agreement, which is not vague apparently in any particular, but is a complete contract in itself. Further than that, even admitting that the written contract had been so varied, altered or contradicted, we are met with the question as to whether the plaintiffs have sustained their issue, which is to be tried by the jury, by showing

faulty construction, low grade of material used, poor workmanship, carelessness and negligence in the premises. I think that on that point the only evidence that was offered was that which the court ruled out at the time it was offered, and that was the question of the worm-eaten girder or plank which the jury heard referred to. All of the other evidence to substantiate that charge was that all these things alleged were to be inferred because at some time in the history of the building, some years after the admitted period of completion as indicated by the payments, there did exist a certain deflection in the building. Further, as against that contention of the plaintiffs, we have had the testimony of their last expert that the machinery here, if it had been treated in a certain way, could have been well sustained by the construction, plan or scheme of this building, and that the purposes of the erection of such a building had all been provided for in the plan which is in evidence, which had been examined by the bureau of building inspection and approved by that bureau. That witness testified that there was nothing in the materials or workmanship that would have led to any condemnation on the part of the building bureau of the municipality. Then we have certain testimony which shows expenditures upon the part of the plaintiffs which to a considerable extent may have been brought about by a substitution of a different character of structure than the one originally put up by the defendants.

For these reasons, and the reasons stated by the court yesterday, which are a part of the record, and will not therefore be repeated, the court believes there has not been sufficient definite testimony of damages suffered by reason of the causes set out in the pleadings, to be submitted by the court to the jury, and upon the whole consideration of the case the court feels constrained to grant the motion for a nonsuit.

*Error assigned* was refusal to take off nonsuit.

*H. J. Rebman,* with him *James Gay Gordon,* for appellants.—Where, as in this case, the plaintiffs have relied upon the special skill and knowledge of the defendants and upon their representation that the paper to be signed was only in furtherance of the controlling purpose of the contract, it is equivalent to fraud for the defendants to avoid the force of the representations which induced the signing of the written agreement while they seek to shield themselves behind the rigid and narrow terms of the writing itself: Christ v. Diffenbach, 1 S. & R. 464; Cullmans v. Lindsay, 114 Pa. 166; School Furniture Co. v. Warsaw School Dist., 130 Pa. 76; Sutch's Est., 201 Pa. 305; Fidelity & Casualty Co. v. Harder, 212 Pa. 96; Keller v. Cohen, 217 Pa. 522.

*George S. Graham,* with him *Joseph Gilfillan,* for appellees, cited: Streator v. Paxton, 201 Pa. 135.

Per Curiam, April 18, 1910:

For the reasons given by the court below in entering the nonsuit the refusal to take it off is affirmed.